Our next case is number 18-12457, Harbourside Place, LLC versus the Town of Jupiter. Mr. Figg. Good morning. May it please the Court. I'm Paul Figg on behalf of Harbourside Place. Because this appeal involves a noise ordinance and whether it is constitutional under the First Amendment, I want to start off with a reference point. When you go home at night and sit down at the dinner table and have that conversation, that ordinary conversation, how was your day, the sound level of that ordinary conversation is 60 to 65 decibels. That is the same sound level that the town wants to impose at the property line of a sound-producing property without respect to whether there's a recipient of that sound. There are two means of regulation under the First Amendment that signal potential likely violations of the First Amendment, content-based regulation and prior restraint. Ordinance 116 has both. The presence of either means Ordinance 116 is presumptively unconstitutional. Ordinance 116 regulates content of sound in two ways. Section 13-86A3 specifically treats sound differently based upon its expressive content by requiring... That's not correct. I mean, how can it... It regulates it based on whether or not it is a live performance or not, but not the type of performance. You could have a Shakespeare production. You could have a political speech. You could have a live musical performance. You could have a one-person comedy show. All of those get treated the same no matter what the content of the speech is. Is that not correct? That is not correct. Under A3, only outside live musical performance is subject to the prior restraint of either outdoor venue approval or special permit scheme. Other sounds. All of those other expressions that you mentioned that create sound, any of those can be engaged in without getting the town's permission in advance. And that, it is the unequal application with respect to sound which makes it content-based. As the Supreme Court said in City of Cincinnati v. Discovery Network, a sound ordinance is permissible when it applies to music, political speech, advertising, because all of those make sound. Counsel, has the town attempted to enforce this ordinance yet? The town has not specifically enforced Ordinance 116 against us. It adopted us. It adopted Ordinance 116 and we went straight to court. However, the town applied the noise ordinance it had prior to the adoption of Ordinance 116 for a period of two years. In that application, the town interpreted that ordinance in such a manner that was unsupported by the text of the noise ordinance. When we pointed that out, the town then . . . You don't have the same argument with that particular ordinance as far as content-based or prior restraint, do you? No, we do not. Okay. We do not. And so, I think we're on totally different grounds with regard to the court's ruling on that as we are with the new ordinance. Talk to me about the new ordinance. Do you have any concerns about the issue not being right for consideration? Has the town evidenced its intention to enforce the ordinance or has it taken any steps to say we're not going to enforce it or anything like that? The town has taken the steps of saying, well, outside of this record, it has, but that's outside of this record. That's not an issue that was raised at any time in the district court, the ripeness of the issue? They did raise the issue that we have not enforced this ordinance yet, but it did apply to everyone in the town. Did the court consider that argument of ripeness at all? I think the court did not accept that argument because it was . . . Did it address it? If you don't know, it's okay. Just . . . I don't believe so. All right. Then the court also did not address your prior restraint argument at all. Is that correct? That is correct. Okay. Even if we decided that the district court maybe it was correct on its initial ruling with regard to the content-based consideration of that ordinance, would it be necessary for us to send it back to the district court and request the district court to consider the findings with regard to that? Yes, it would because that rendered the ordinance presumptively unconstitutional. They had the burden to . . . They argued it in their briefs, I believe, to the district court, did they not? You argued it and they argued it and the district court just didn't address it. They didn't present any evidence that it wasn't . . . that the regulations were reasonable, narrowly tailored, I'm sorry, narrowly drawn and . . . I know that's your position that their evidence didn't show that, but they argued it certainly to the district court. Yes, sir. Okay. Thank you. You've answered my question. That issue is . . . No, please go ahead. Is there any evidence in the record about why live music is being treated differently from other types of sound? I think there is some basis to treat live music differently than other types of sound, but once again, you have to analyze that under strict scrutiny because there's no evidence in this record supporting that the means the town took in regulating sound, regulating live musical performances specifically, did not implicate . . . I'm sorry. There's no evidence in this record that the town . . . I'm talking specifically about determining whether or not this is content based. If there was something about the quality of the sound that had nothing to do with the quality of sound as opposed to political speech, that's what I'm trying to get at. Is there any evidence in the record? It had nothing to do with the quality of sound, which I think was certainly an issue in the Ward case. It could be the case that live music is more difficult to control because you're dealing with a live performer. Is there anything like that in the record? There is testimony. The only testimony that differentiates live music from, say, recorded music is that live music cannot be put through a limiter. For example, if you could control all of my sound and put it into this microphone, you could have a limiter that would compress that sound so that you wouldn't be able to violate the sound ordinance. But my sound makes . . . I'm sorry. My voice makes noise that doesn't get put into this and so does a live drum or brass or any other kind of instrument. That's the only difference between live musical performance and recorded musical performance. But, counsel, if we imposed a rule that said only you will speak through the limiter, no one else, that would be an example of prior restraint and content-based restriction, would it not? Correct. Correct. And it does, in a sense, because for residential property owners, your son could have his band play in the garage of your home. He doesn't have to get a permanent advance. Why does a commercial property owner have to get that permanent advance? Because a commercial property is not going to have a kid playing a band, playing instruments in a garage. What about the circumstance of a restaurant that has a patio with an acoustical performer? That is . . . I don't know. That's a normal circumstance and that would require the prior approval of the town. In commercial zones or non-residential zones, sound is less of a concern. But it can't be, right, that every single permitting ordinance constitutes a prior restraint. There are requirements, for example, to get permits to conduct a demonstration on public thoroughfares. Not all of those are prior restraints. They can be, but they're not categorically so. What is it about this permitting process that, in your opinion, constitutes or makes it a prior restraint? I think all of those processes are prior restraints. The question is whether they're unlawful prior restraints. Prior restraints are presumptively unconstitutional. And permitting schemes get upheld all the time. But you can show that they are constitutional by showing that your regulations, your permitting regulations, are reasonable, narrowly drawn, and objective. But when you have permitting regulations that use such words as, you need to minimize sound here, or notwithstanding the fact that you have a noise ordinance, the permitting official can impose sound restrictions more restrictive than the noise ordinance. At that point, these regulations are not grounded in something objective, and they've gone beyond what the town has already considered to be the balance of interest between private property rights and sound as a nuisance. Was your argument with regards to the different parts of the ordinance in the district court facial or as applied? Facial with respect to most of it. There's kind of a unique circumstance with respect to the applied because they are applying Ordinance 116 based upon their prior misinterpretation of the . . . I don't know, but that's not the way as applied goes. As applied is not the way they're doing it, it's as applied to you. So my question to you is, when you challenged the different parts of the ordinance and the scheme in the district court, whether you challenged it on prior restraint or content-based grounds, was your challenge facial, as applied, or both? Facial and as applied. As applied to what? As applied to the sound produced at Harborside's outdoor venue. Which was what? Normally in an as applied challenge, I think, the plaintiff says, this statute says X, Y, and Z. It may be okay on its face, but as applied to me, when I engage in Act A, that statute is unconstitutional. So, using that as an analogy, what did you say was being applied unconstitutionally to you based on your purported conduct? Okay. The town . . . first of all, the sound standard that was applied through its special permitting process from 2014 to 2016 was 55 dBA over a three-minute LEQ, which is average of sound over three minutes at the receiving property line. Now, at some point, that changed to 75 dBA at a measuring point on our property that was inside the property line. That is where the town came up with the term surrounding upland property line in its amendment of the noise ordinance. Those two things were applied consistently. And what that application showed is we can meet 55 at the property line, and we can meet the application of the old instantaneous sound standard over there also. We can meet all of those standards. But the town specifically adopted this new peak standard because it knew we could not meet it. They admitted this. They said they had a solution for it. They did not adopt that solution when they adopted Ordinance 116. The peak measurement, as their expert testified, in one piece of three-minute music can give you 43,000 violations. The peak standard was not adopted to regulate excessive sound. It was adopted to find violations to control content. Counsel, let me boil it down to soup because I know you're over your time. If the town was to change their ordinance to be not only musical performances but all performances, then that would eliminate content-based analysis. We would do strict scrutiny. We would do the traditional. And then if the district court evaluated prior restraint and found that the prior restraint applied to your client was legal and reasonable, then the town would be free to do that. Is that correct? That is correct. If you treat it all sound the same, equal application, 1386A3 would not be content-based. If we found that 16-1, the new ordinance, was invalid, unconstitutional, and they went back to the ordinance that they're applying against you now, your center arguments would still be there. Your arguments about how they're controlling you under the old ordinance, but that was a decision that was not made under strict scrutiny by the district court and properly not made under strict scrutiny. Is that correct? I'm not sure I understand the specific question. We completely complied with the old noise ordinance. That's our position. So it didn't need to be analyzed under anything. So you'd be fine? Yes. Okay. Is subsection A, in your opinion, is subsection A1 content-based? It is not. It regulates sound during the nighttime equally. For everybody? For everybody. With regard to a sound amplification device or other sort of machine? Correct. We're dealing with daytime. We're dealing with daytime. Correct. Right, right. I just wanted to get your thoughts on A1. Okay, Mr. Flake, thank you very much. Thank you. We'll give you your time for rebuttal. Mr. Roberts. Thank you, Your Honor.    Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. What has appealed here is the denial of a drastic and extraordinary remedy of a temporary injunction. There was a result of an evidentiary hearing held nine months after the suit was filed, and then the decision was rendered 20 months later in May 2018. What is at issue here, and I think probably is most enlightening, is if you read the conclusion of the motion for emergency temporary injunction, it was filed on June 10, 2016. Harborside respectfully requests entry of a temporary injunction on an emergency basis requiring the Town to monitor Harborside's compliance with the Town's exterior sound ordinance by measuring exterior sounds created by Harborside at the Water's Edge residential property line, as it has done throughout 2015, and prohibiting the Town from interfering with Harborside's regularly scheduled free public programming through physical force or threats, or through the threat of actual issuance of punitive notices of violation until this case is finally decided on the merits, and for such other relievance accord deemed just and proper. You'll note that there's no request here that anything be found unconstitutional, that there's no argument that there was a prior restraint, that there was any treatment. All they wanted with this temporary injunction was for the Court to change the ordinance. The ordinance in June 2016 was no different, as far as it was respect to them, than it was before that. The instantaneous peak measurement standard was never applied to them, because you read the ordinance, 13.86, A, outdoor amplified sound is limited to 60 decibels during the day in a mixed-use sound zone. Table 1. You go to Table 1, and that's where all outdoor amplified sound is measured, throughout the Town. Now, what happened here in this case. Before you get to that, the District Court understood Harborside's motion for an injunction as including at least some constitutional claims, so I'm reading from page 2 of its order. Correct. Harborside contends that the enactment of the ordinance has resulted in an unconstitutional limitation on its right of freedom of expression under the 1st and 14th Amendments by unlawfully restricting its ability to have live music performed at Harborside Place. Correct. I agree with that. There were some constitutional claims asserted, not only in the complaint, but in the motion for injunctive relief, right? And certainly there was argument at the hearing on those. There's no question about that, but I guess it posits the other question here, that they ask in their brief that this denial be reversed, but nowhere do they say what it is the court should have done. Counsel, is it without question, or do you legitimately question the fact as to whether or not this ordinance is content-based? No, I agree with the District Court that it's content-neutral. You do? Yes, sir. Okay? And the reason I say that is, what I was going to say is, number A, 1386A, talks about outdoor amplified sound. You have three different scenarios here in the town of Jupiter. You have noise, just noise. Then you have amplified noise. You have indoor amplified noise, and that's in 13.85. Then you have outdoor amplified noise, which is in 13.86A. The limit there is 60 decibels. If you want to play louder music, then you go to 13.86B, which says, we recognize, and this just started in 2010 with the establishment of Guanabanas up the street. If you want to have an outdoor venue, which means you want to have an outdoor stage, and you're going to play music, primarily live music, outdoors, we're going to let you do that if you follow these regulations. And we're going to assign initially 60, and now by virtue of the amendment, increase to As the district court pointed out, that really wasn't changed. The only thing that was changed about it was the adding the word upland, because recognizing the fact that both Guanabanas and Harborside were on the water. So we wanted to clarify, where is that property line? It's the upland property line, and that was not ambiguous. So this particular exception to the normal thing was added to give them some benefits. If they didn't want that benefit, they didn't have to. Counsel, if you go to 13-86A3, and I'm just going to read it, outside live musical performances associated with a non-residential establishment shall meet the outdoor venue regulations of subsection B below, or obtain special permits pursuant to chapter 27, article 4, entitled special permits. Correct. All right. Isn't that the basis for your opposing counsel arguing that it was content based? That's what he argues. I don't agree with it. Okay. I got you. Just follow with me though. Yeah. Did you restrict any other performances, like instead of outdoor live musical performances, did you restrict political performances? Arguments that might be brought on by law students that were there making moot court arguments that were live, did you restrict those during the day when they were amplified? Did you restrict comedy performances? Did you restrict anything else in such a manner as to require that they meet the outdoor venue regulations of subsection B below, or obtain special permits? Did you do that with your ordinance? Well, the special permit ordinance, again, allows ... You take the ordinance, the sound or noise ordinance, and then the special permit ordinance allows an exception to that. Are you saying that other performances also have to comply with that same restriction? Yes, sir. Yes, sir. It depends upon what you're presenting. It's just a misunderstanding that not only is live musical performance is required to do that, but you're saying that all performances, everything that's live, everything that's there is required to go under the same restrictions with regard to sound, where it's measured, the manner in which it's measured, and the level to which it cannot exceed. Well, and again, your point, to my point, is that the outdoor venue is a special category. Before the amendment in June of 2016, it didn't say live music. It just said that, but recognizing that what we have for this outdoor venue category is essentially live music, and it doesn't say that, we want to add it in there. Other ones don't come into that because they're not outdoor venues. I think Judge Kugler started out by asking you a different question about whether or not this was content-based. Your position, I take it, is that if a law, statute, or ordinance regulates only one category of speech but is not based on the content within that category, it is not a content-based restriction. Is that right? That's correct. Isn't that really turning content-based into viewpoint-based? No. I mean, there's nothing in the ordinance which talks about the type of music that is doing it. It's a recognition that music, just like, it's amplified sound, and what you also have to recognize is that when the ordinance was amended, outdoor venue is defined, and it is defined, and that change in amendment included live music. Could you limit, could you change A3 to talk about outside live political expression constitutionally? No. Why is this any different? Well, because this is just sound. We're only regulating sound. In my hypothetical, you're just regulating the sound, but the sound of political expression. No. Here, you're regulating the sound of live musical performances. Why is one content-based and not the other? Because it's music is of sound. It's not the type of music that's being played. Political speech is a sound. It's not the type of political speech being expressed, right? The outdoor venue presented a specific type of situation where the live music, recorded music. At this outdoor venue, they play movies, too, and they play, they have speeches. They have classes and stuff like that. All of that recognition, the particular thing, falls within it. It is not just live music. It covers a variety of different things that are going to be presented at that, and it's a recognition that this type of thing, so close to the residential area where there's a substantial interest in doing it, and certainly a wealth of complaints about the noise level there, is in the substantial list of the town to recognize and to regulate. Counsel? Yes, sir. I have a personal preference in the kind of music that I like. Country, I guess, is probably old hard rock from back in my days, because I'm older. I don't particularly care for rap music. It's not my taste. Okay? But this ordinance, with the requirement that a permit have to be obtained, doesn't it enable the town to review prior to a performance and pick what kinds of music? Maybe they despise rap, and there's other kinds of music out there. Maybe they don't like a Christian group that's going to play. Maybe they don't like some other group that's going to play. Isn't that the problem with prior restraint? The reason why we have to be so cautious when we allow just a blanket kind of a restriction? The district court apparently did not go through any kind of analysis on the prior restraint, but isn't that part of the problem that we have with this ordinance? I agree with you that prior restraint is unlawful. I don't think this ordinance requires that. The reason I say that is because if you don't want an outdoor venue there, you can go out there and have a guitar player, and whenever you do it, the requirements in here all relate to the level of sound. None of them relate to what kind of music are you going to play, whether you're going to have amplified sound of a political speech or that nature. All they talk about is . . . I think what Judge Kugler is trying to ask you, and he correct me if I'm wrong, is that if you don't meet the outdoor venue requirements, then you have to get a special permit, right? If you want to go to the above those sound levels. By getting a special permit, I think his question is asking whether or not you are putting in the hands of the government the decision about whether or not to favor one kind of musical expression over another by granting the government the ability to grant or deny special permits when they're sought. We have experience, and the record is replete with it. 150 special permits were granted during the year 2015. Not a one of them told them that they couldn't play a certain type of music or not. We had that experience. As applied, they wanted to go back there. What happened during the year 2015 through 2016 is because they had not achieved their certification as an outdoor venue. They hadn't met those requirements in order to ameliorate the sound. The town took the extra step of going and saying, well, ordinarily you could only entitle to 40 special permits a year, but we'll give you more, and they ended up giving 150 special permits. Each time they applied for it, they asked what they wanted to do, and the town said here's the conditions of the permit. Exactly. What do you want to do? That's the question that your town was asking, and that's where I have a problem with it. Why didn't the district court address that question? Why? Because the district court found it to be content for neutral and didn't find a prior restraint because the town, as he said, the town's actions were reasonable in this situation. He addressed it. He just said it was reasonable as an alternative to allow them to do this rather than doing nothing else. From the very outset of this case, they wanted, as a part of their development approval, they wanted to have an outdoor venue. It goes back to 2013. At that point in time, they received an approval of it. They just had to meet the requirements, which dealt with the attenuation of sound. They just never wanted to do that, and so no matter what they played, and the town didn't care what they played, it's only that the sound level was not meeting the town code. Did they say that in the ordinance? We don't care what you play? We're going to give you a permit on anything as long as the sound is exactly this. The permits talk about a lot of different things. It talks about police presence and things of other public safety nature, but as far as the sound level, it simply says 75 dB at that property line or 55 dB there at that property line. It doesn't say you can't play country music, and in fact, there was a country music concert here. There were all kinds of concerts. There's Frank Sinatra concerts. It varied. Not a one time in the 150 permits did the town ever say, no, you can't get a permit because I don't like that music.   .